UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-cv-11531

DR. SHIVA AYYADURAI

      Plaintiffs

v.

MAYOR MARTIN WALSH, in his official capacity as the Mayor of the City of Boston,

&

BILL EVANS, in his former official capacity as the Commissioner of the Boston Police Department,

      Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MAYOR MARTIN J. WALSH'S AND COMMISSIONER WILLIAM EVANS' MOTION TO DISMISS**

**I.   INTRODUCTION**

   Defendants, Martin J. Walsh ("Mayor Walsh") and William Evans ("Commissioner Evans"), respectfully move this Honorable Court to dismiss Plaintiff's Complaint ("Complaint or Compl.") pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be granted.[1]  Plaintiff alleges generally that Mayor Walsh and Commissioner Evans violated his First Amendment rights, but Plaintiff fails to allege how any such constitutional violations were caused by a municipal policy or custom.  And while Plaintiff alleges that Mayor Walsh made defamatory statements about him to the media, these statements are not actionable because

---

[1] Because Plaintiff has brought suit against Mayor Walsh and Commissioner Evans in their official capacities, Plaintiff's claims are the legal equivalent of claims against the City of Boston ("City").  See Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005).

1

they are 1) privileged; 2) constitutionally-protected opinions; 3) not of or concerning the Plaintiff; 4) that lack the degree of fault necessary to support a claim.

## II.   FACTUAL BACKGROUND[2]

Plaintiff obtained a permit for him to attend the Boston Free Speech Rally on August 19, 2017. Compl. ¶ 16. At the time, Plaintiff was campaigning for the United States Senate. Compl. ¶ 18. Per police protocol, there were two areas in which people could congregate for the rally: "Area 1" and "Area 2". Compl. ¶ 23. Permit holders were permitted to speak in "Area 1", while supporters of the permit holders and the press were permitted to speak in "Area 2." Compl. ¶¶ 24-25. The Boston Police Department set up these designated areas to protect the speakers of the rally. Compl. ¶ 26.

Plaintiff began speaking in "Area 1", but was forced out by one or more unnamed police officers. Compl. ¶ 30. Other individuals were then permitted to speak in "Area 1". Compl. ¶ 31. Organizers of the Boston Free Speech Rally ended the event at approximately 12:45 p.m. Compl. ¶ 32.

In advance of the Boston Free Speech Rally, Mayor Walsh made the following statement to the media:

> Boston does not welcome you here. Boston does not want you here. Boston rejects your message. We reject racism, we reject white supremacy, we reject anti-Semitism, we reject the KKK, we reject neo-Nazis, we reject domestic terrorism, and reject hatred. We will do every single thing in our power to keep hate out of our city.

Compl. ¶ 37. After the rally was over, Mayor Walsh made the following statements:

> I want to thank all the people that came out there [sic] that message of love, not hate…to fight back on racism, to fight back on anti-Semitism, to fight back on the supremacists that were coming to our city, on the Nazis that were coming to our city.

---

[2] For the limited purpose of this motion only, Mayor Walsh and Commissioner Evans assume the following facts set forth in Plaintiff's Complaint are true.

2

Compl. ¶ 39.

> I'm not sure what was said in there. There were a mix of people that went into the free speech area. There was a candidate for senate against Elizabeth Warren.

Compl. ¶ 40.

Following the rally, people started writing articles about the Plaintiff in which they essentially deemed him a white supremacist. Compl. ¶ 42.

### III.  STANDARD OF REVIEW

A complaint or count therein must be dismissed where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). However, this tenet does not apply to legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). Mere recitals of the element of a cause of action, supported only by conclusory statements, do not suffice. See id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 545 (citations omitted). As discussed below, Plaintiff's Complaint should be dismissed for failing to meet the Twombly pleading requirement.

### IV.  ARGUMENT

#### A.  Plaintiff's First Amendment Claims (Counts I, II, and III) Fail Because He Does Not Allege That A Municipal Policy Or Custom Was Responsible For The Alleged Violations.

Counts I, II and III of Plaintiff's Complaint, advanced pursuant to 42 U.S.C. § 1983, concern allegations that Plaintiff's First Amendment rights were violated. As noted above,

because Plaintiff has brought suit against Mayor Walsh and Commissioner Evans in their official capacities, these claims will be treated as claims against the City.  See Diaz-Garcia v. Surillo-Ruiz, Civil No. 13-1473 (FAB), 2014 WL 4403363, at *5 (D.P.R. Sept. 8, 2014) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985); Surprenant, 424 F.3d at 19 ("A suit against a municipal official in his or her official capacity is considered a suit against the municipality itself").

Under § 1983, the City is "not responsible for the unauthorized and unlawful acts of its officers." Id.  Courts analyzing § 1983 "have consistently refused to hold municipalities liable under a theory of respondeat superior." Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997). "Municipal liability may only be imposed when there are 'underlying, identifiable constitutional violations' that are 'attributable to official municipal policy.'" Dew v. City of Boston, 405 F. Supp. 3d 294, 303 (D. Mass. 2019) (quoting Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010)).  The Supreme Court, "concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very high bar for assessing municipal liability under [Section 1983]." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).  Therefore, to plead municipal liability under § 1983, the plaintiff must allege (1) an unconstitutional "policy or custom" of the City, and (2) that this policy or custom was "the moving force" behind the alleged injury.  See Brown, 520 U.S. at 403-05.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, (2011).  Section 1983 is not just "an instrument of justice in the hands of the weak against the mighty," but it also has the potential for misuse; therefore, a Section 1983 claimant must "at least set forth minimal facts, not

4

subjective characterizations, as to who did what to whom and why." Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982).

With this analytical framework in mind, Plaintiff has failed to plead a claim against the City because he has not alleged that a municipal policy or custom was responsible for any alleged constitutional violations. To the contrary, Plaintiff alleges that the City granted him a permit to speak at the rally, see Compl. ¶ 16, and that the City had lawful security measures in place to ensure that the speakers of the rally were able access the bandstand safely. See Compl. ¶¶ 23-26. To the extent the Plaintiff alleges a police officer forced the Plaintiff to leave the bandstand, the actions of that police officer would have been contrary to the City's directives concerning the rally, which, again, permitted Plaintiff to access the bandstand and speak freely at the rally. Plaintiff's failure to allege that a City policy or custom was responsible for any alleged constitutional violation is fatal to his First Amendment claims. Accordingly, Counts I, II, and III should be dismissed.

      **B.**      **Plaintiff's Defamation Claim (Count IV) Fails Because The City Cannot Be Liable For Intentional Torts And Because Mayor Walsh's Statements Were Privileged And Not Defamatory.**

Again, because Plaintiff has brought suit against Mayor Walsh in his official capacity, his defamation claim will be treated as a claim against the City. But the City is immune from liability for defamation claims pursuant to the Massachusetts Tort Claims Act. See Mass. Gen. Laws c. 258, § 10(c) (stating that the City cannot be liable for "any claim arising out of an intentional tort, including…libel, slander"). Plaintiff's defamation claim should be dismissed for this reason alone.

Moreover, even if Plaintiff were to amend his complaint to bring his defamation claim against Mayor Walsh in his individual capacity, any such amendment would be futile because Mayor Walsh's statements were privileged and not defamatory.

### 1. Mayor Walsh's Statements Were Privileged.

#### a. Absolute Privilege

"An absolute privilege provides a defendant with a complete defense to a defamation suit even if the defamatory statement is uttered maliciously or in bad faith." Mulgrew v. Taunton, 410 Mass. 631, 634 (1991). Though Massachusetts has not yet recognized an absolute privilege in the context of a defamation claim against a high-ranking government official, federal courts, along with a majority of other states, have done so. "The United States Supreme Court has expressed two significant policy reasons for the adoption of an absolute privilege." Edwards v. Commonwealth, 477 Mass. 254, 254 (2017). "First, Federal officials should be able to discharge their duties uninhibited by the fear and distraction of lawsuits." Id., citing Barr v. Matteo, 360 U.S. 564, 569-576. "Second, an absolute privilege furthers free speech by allowing Federal officials to speak with complete candor concerning matters of public importance." Id., citing Barr, 360 U.S. at 577. "A majority of States have been persuaded by this reasoning, and have adopted an absolute privilege which shields the governor, or cabinet-level State officials, from defamation claims for statements made in the course of their official duties." Edwards, 477 Mass. at 261; see also e.g., Blair v. Walker, 64 Ill. 2d 1, 6-11 (1976) (adopting absolute immunity to shield Illinois governor from defamation claim); Jones v. State, 426 S.W.3d 50, 55-56 (Tenn. 2013) (cabinet-level State officials such as commissioner of Department of Correction immune from defamation claims arising from their official duties); Salazar v. Morales, 900 S.W.2d 929, 932 (Tex. App. 1995) (attorney general has absolute privilege to publish defamatory

6

statements in connection with official duties). The same reasoning should apply here to afford Mayor Walsh absolute immunity for any alleged defamatory statements issued in the course of his official duties in connection with the Charlottesville and Boston rallies.

### b. Conditional Privilege

Even if this Court should find that Mayor Walsh's statements are not subject to an absolute privilege, they are nonetheless subject to a conditional privilege. "Statements made by public officials while performing their official duties are conditionally privileged." Mulgrew, 410 Mass. at 635. This is because "[t]he threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues." Id. In these instances, "the importance of free communication outweighs the interest in protecting reputation." Id. The conditional privilege is meant to allow public officials to speak freely on matters of public importance during the exercise of their official duties. Id.; see also W. Prosser & W. Keeton, Torts § 115, at 830 (1994). A conditional privilege immunizes a defendant from liability unless he acted with actual malice, Tosti v. Ayik, 386 Mass. 721, 726 (1982), or unless there is "unnecessary, unreasonable or excessive publication," and the plaintiff establishes that the defendant published the defamatory information recklessly. Bratt v. International Business Machs. Corp., 392 Mass. 508, 509 (1984).

Here, all of Mayor Walsh statements were made in his capacity as the Mayor of Boston. The Boston Rally, which was planned on the heels of the Charlottesville Rally, received national media attention and was indisputably a matter of public concern. The public—and the citizens of Boston, in particular—had an interest in hearing what Mayor Walsh had to say regarding an upcoming, controversial event. The Plaintiff cannot succeed in his defamation suit, then, unless

he establishes that Mayor Walsh acted with actual malice or recklessness. The crux of Plaintiff's Complaint is that Mayor Walsh mischaracterized him as a member of a "hate" group. But Plaintiff cannot prove that Mayor Walsh's statements were made with actual malice. Plaintiff seems to allege that Mayor Walsh should have known that Plaintiff was not a racist, a neo-Nazi, or a white supremacist because Plaintiff, at some point, held up signs saying "Love, Love, Love,"; "Be the Light"; "Black Lives DO Matter; and "No to GMOs, STOP Monsanto." Compl. ¶ 76. But there are no allegations that Mayor Walsh ever saw Plaintiff holding these signs, and even if he had, Mayor Walsh still would not have been reckless in making his statements. Plaintiff seems to suggest that by holding a "Black Lives Matter" sign he declared he was not a racist; even assuming that is true, "a subject's simple denial is sufficient to demonstrate that the subsequent publication shows a reckless disregard for the truth[.]" Lemelson v. Bloomberg LP, 253 F. Supp. 3d 333, 340-341 (D. Mass. 2017). In the absence of any allegations as to how Mayor Walsh acted with malice or recklessness, all of his statements are conditionally privileged.

> **i. *The Massachusetts Appeals Court Has Already Decided That Some Of These Statements, As Well As Other Similar Statements, Are Conditionally Privileged; Accordingly, The Doctrine Of Res Judicata Should Apply.***

In 2017 an individual named Brandon Navom ("Navom") brought a nearly identical defamation claim against Mayor Walsh based upon some of the same statements that Plaintiff now claims are defamatory.[3] Like Plaintiff, Navom alleged that he was a scheduled speaker at

---

[3] As opposed to the instant complaint, in which only three statements are at issue, Navom's Complaint was much more voluminous and alleged defamation based on 25 statements made by Mayor Walsh concerning either the Charlottesville Rally or the Boston Rally. The essence of Mayor Walsh's statements in Navom's Complaint and in Plaintiff's Complaint is the same: that Mayor Walsh did not want hate groups coming to Boston and that Mayor Walsh

the Boston Rally and that the Mayor's statements to the media unfairly categorized him as a member of a hate group. The Massachusetts Superior Court (Barry-Smith, J.) rejected Navom's defamation claim and concluded that the Mayor's statements were conditionally privileged. The Massachusetts Appeals Court agreed: "it was perfectly reasonable for the mayor of Boston to be concerned that the Boston rally could become a gathering place for some hate groups or violent protestors, regardless of plaintiff's specific intentions for the rally or his non-affiliation with hate groups." Navom v. Walsh, No. 19-P-230, 2020 WL 1682818, *3 (Mass. App. Ct. Apr. 7, 2020) (unpublished), rev. denied, 485 Mass. 1101 (Jun. 11, 2020). The Appeals Court likewise rejected Navom's argument that the Mayor acted recklessly by failing to apprise himself of the various media sources that would have alerted him to the fact that Navom denied being a member of hate group—indeed, the same argument that Plaintiff here now makes: "The plaintiff further posits that the information available through media sources would have advised the defendant that the organizers and speakers had, in fact, denied being part of any hate group. This is not enough to plausibly demonstrate that [Mayor Walsh] 'in fact entertained serious doubts as to the truth of his publication.'" Id. at *5 (citing St. Amant v. Thompson, 390 U.S. 727, 731 (1968)). See also Lemelson v. Bloomberg LP, 253 F. Supp. 3d 333, 340-341 (D. Mass. 2017) ("If a subject's simple denial is sufficient to demonstrate that the subsequent publication shows a reckless disregard for the truth, then no disputed fact could ever safely be published"). Just as the Massachusetts Superior Court and the Massachusetts Appeals Court found that the statements were conditionally privileged, so too should this Court.

      The doctrine of res judicata should apply. The First Circuit has found, in some circumstances, that the doctrine can apply to bar the maintenance of action by a person who was

---

mischaracterized Plaintiff as part of a hate group. The Massachusetts Superior Court and the Appeals Court both found that all of Mayor Walsh's statements were conditionally privileged.

not a party to the initial action.  See Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 757 (1st Cir. 1994).  For res judicata to apply there must be "1) a final judgment on the merits in an earlier suit; 2) sufficient identicality between the causes of action asserted in the earlier and later suits, and 3) sufficient identicality between the parties in the two suits.  Id. at 755.  Here, the first two prongs are easily satisfied.  The Superior Court's order on Mayor Walsh's motion to dismiss (and the Appeals Court's affirmation of same) is a final judgment, and the causes of action are nearly identical:  a defamation claim against Mayor Walsh based on statements he made regarding the Charlottesville and Boston rallies in which he, according to both Navom and Plaintiff, mischaracterized them as members of a hate group.  The third prong is also established because there is sufficient privity between the parties in the two suits.  Both Navom and Plaintiff were scheduled speakers at the Boston Rally.  Plaintiff was on constructive notice of Navom's lawsuit—indeed, Navom's suit was resolved before the instant complaint was filed.[4]  See Gonzalez, 27 F.3d at 761 (collecting cases in which "courts have detected tactical maneuvering designed unfairly to exploit technical nonparty status in order to obtain multiple bites at the litigation apple").  Plaintiff and Navom have a common interest:  both were speakers at the Boston rally, both claim that they are now unfairly categorized as racists or white supremacists, and both claim that Mayor Walsh's statements are to blame.  Under these circumstances, privity exists and all elements for the application of the res judicata doctrine are satisfied.

   **2.**   **The Statements Were Not Defamatory.**

Even if this Court were to conclude that the statements were nor privileged, Plaintiff's defamation claim still fails on its merits.  "To succeed on a defamation claim under

---

[4] Three days before Plaintiff filed the instant action, another scheduled speaker at the Boston Rally—Samson Racioppi—filed a nearly identical defamation lawsuit against Mayor Walsh based upon some of the same statements.  See Docket No. 1:20-cv-11357-MBB.  Mayor Walsh has likewise moved to dismiss that lawsuit on the same grounds.

10

Massachusetts law, a plaintiff must show that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his reputation in the community and which either caused economic loss or is actionable without proof of economic loss." Stanton v. Metro Corp., 438 F.3d 119, 124 (1st. Cir. 2006) (citing White v. Blue Cross & Blue Shield of Mass, Inc., 442 Mass. 64, 66 (2004)).

Plaintiff's defamation claim fails because all of Mayor Walsh's statements were either 1) nonactionable opinions protected by the First Amendment; 2) not "of or concerning" the Plaintiff; or 3) lacking in the degree of fault required to support a defamation claim.

### a. The Statements Are Non-Defamatory Opinions Protected By The First Amendment.

"Superimposed on any state's defamation law are First Amendment safeguards." McKee v. Cosby, ---F.3d---, 2017 WL 4675588, *3 (1st. Cir. 2017). Under the First Amendment, opinions are constitutionally protected and cannot form the basis of a defamation claim. See Gertz v. Welch, 418 U.S. 323, 339-40 (1974). Though there is no "wholesale defamation exemption for anything that <u>might</u> be labeled [an] 'opinion,'" Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990) (emphasis added), in determining whether a statement is actionable, "[t]he critical question is whether the challenged statement 'reasonably would be understood to declare or imply provable assertions of fact.'" McKee, 2017 WL 4675588, *3 (citing Phantom Touring, Inc. v. Affiliated Publ'ns, 953 F.2d 724, 727 (1st. Cir. 1992)). This is because if a statement cannot be proven true or false, the statement is considered an opinion. See Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc., 804 F.3d 59, 64 (1st. Cir. 2015). Moreover, even statements that <u>can</u> be proven false <u>still</u> are not actionable so long as the speaker makes clear that he is expressing a subjective view rather than "claiming to be in possession of objectively verifiable facts." See Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st. Cir. 2000) (internal quotations omitted).

In addition to statements that cannot be proven true or false, "[s]tatements that contain imaginative expression or rhetorical hyperbole" are not defamatory and are protected under the First Amendment. Milkovich, 497 U.S. at 20. These types of statements typically consist of epithets or generalizations. See National Ass'n of Government Emp., Inc. v. Central Broadcasting Corp., 379 Mass. 220, 229 (1979) (holding that the word "communist" is too vague to be defamatory); see also Buckley v. Littell, 539 F.2d 882, 884-884 n.1 (2d. Cir. 1976) (holding that phrases such as "fascist" or "radical right" fall within the realm of opinion); Letter Carriers v. Austin, 418 U.S. 264, 284-86 (1974) (holding that the word "fascist" or "traitor" in the course of a labor-management dispute is not actionable); Greenbelt Co-op. Publishing Ass'n v. Bresler, 398 U.S. 6, 13-14 (1970) (holding that a newspaper's characterization of a developer's negotiating position as "blackmail" was not defamatory). This is because the First Amendment prohibits defamation actions based on loose, figurative speech that no reasonable person would believe presented facts. See Letter Carriers, 418 U.S. at 284.

"The determination whether a statement is a factual assertion or an opinion is a question of law if the statement unambiguously constitutes either." King v. Globe Newspaper Co., 400 Mass. 705, 709 (1987), cert. denied, 485 U.S. 940, 962. To determine whether a statement is an opinion or other protected speech, a court must consider "all the words used, not merely a particular phrase or sentence." See Cole v. Westinghouse Bdcst. Co., 386 Mass. 303, 309 (1982) (emphasis added). A court must also consider "all the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." Id. To that end, context is critically important. "What constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole." Cole, 386 Mass. at 310; see also Puccia v.

12

Edwards, 1995 WL 513895, at *3 (Mass. Super. Apr. 28, 1999) (noting that calling someone a racist, without more, amounts to an opinion).

Here, all the statements referenced in Plaintiff's Complaint are not actionable because they are Mayor Walsh's constitutionally-protected opinions. Presumably, Plaintiff takes issue with the word "hate" in some of the statements. The word "hate," however, is too "loose" to be considered defamatory. Letter Carriers, 418 U.S. at 284. The word "hate" is more general than the words "fascist" or "communist," both of which have been rendered non-defamatory by either the United States Supreme Court or the Supreme Judicial Court. Moreover, these statements are not capable of being proven true or false; for example, it cannot be proven true that Boston "rejects hate" or that Boston does not want to hear a "message" about "hate." The context in which these statements were made—in the days following the Charlottesville Rally and with the understanding that the same organizers were planning to come to Boston—makes clear that Mayor Walsh was expressing his opinions about the Charlottesville Rally and that he did not welcome that type of rhetoric in Boston. Mayor Walsh does not lose his First Amendment rights simply because he is the Mayor. As a result, the above statements constitute opinions, not facts, and they cannot give rise to a defamation claim. See Pan Am., 804 F.3d at 64.

        **b.**        **The Statements Are Not "Of And Concerning" The Plaintiff.**

The statements also are not defamatory because they are not "of and concerning" the Plaintiff. "It is a fundamental principle of the law of defamation that a plaintiff must show, inter alia, that the allegedly defamatory words published by a defendant were of and concerning the plaintiff." New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 474 (1985); Eyal v. Helen Bdcst. Corp., 411 Mass. 426, 429 (1991). A defendant need not refer to a plaintiff by name in order to defame him. Rather, a plaintiff can prove that a

defendant's words were "of and concerning" him by showing "either that the defendant intended [his] words to refer to the plaintiff and that they were so understood, or that the defendant's words reasonably could be interpreted to refer to the plaintiff and that the defendant was negligent in publishing them in such a way that they could be so understood." New England Tractor-Trailer, 395 Mass. at 483.

Whether a communication can reasonably be understood to be "of and concerning the plaintiff" depends on the circumstances. See id. at 478 n.5. As with determining whether a statement constitutes a fact or an opinion, courts must consider the context in determining whether a statement is "of and concerning the plaintiff." See Alharbi v. Theblaze, Inc., 199 F. Supp. 3d 334, 354 (D. Mass. 2016) (dismissing defamation claim based on statements clearly directed at persons other than the plaintiff).

When a publication refers to a group of people rather than an individual person, as is the case with two of the statements here, additional principles apply. First, the group-member-turned-plaintiff must show a "special application of the defamatory matter to himself" in order to state a defamation claim against a defendant. See Loeb v. Globe Newspaper Co., 489 F. Supp. 481, 483 (D. Mass. 1980) (citing Arcand v. Evening Call Pub. Co., 567 F.2d 1163, 1164 (1st. Cir. 1977)). Second, though a cause of action may lie "if a defamatory statement applies to all members of a small group," a claim "cannot come within this second principle merely by denominating a small subset of a large group of plaintiffs, unless the small group so defined reasonably appears to have been identified by the text." Loeb, 489 F. Supp. at 484.

In Loeb, the Boston Globe published statements on its editorial page that the Union Leader, a New Hampshire paper, was "probably the worst paper in America" and that the publisher of the Union Leader "runs a newspaper by paranoids for paranoids." Id. at 483.

Twenty-four staff members (consisting of reporters and assistants) of the Union Leader, which employed 325 individuals in total, sued the Boston Globe for defamation, claiming that the circumstances suggested that that the statements were directed at them.  The Court rejected their claim, noting that the statements provided no reasonable basis to focus on these twenty-four staff members in particular.  Id. at 484.  The Court similarly rejected a defamation claim brought by three Union Leader editors, who argued that they were the likelier targets of the Boston Globe's criticism by virtue of their greater authority.  The Court disagreed, finding that no "special application" to the three editors could be inferred from the general commentary published in the Boston Globe.  The Court noted that merely denominating a small subset of a large group of plaintiffs is not sufficient to give rise to a defamation claim unless that small subset "reasonably appears to have been identified by the text."  Id.  There was nothing in the published text that specifically referred to the three editors.  The same is true here.

Mayor Walsh's statements, when taken in context, were not "of and concerning" Plaintiff.  Turning to the first two statements at issue:

- "Boston does not welcome you here.  Boston does not want you here.  Boston rejects your message.  We reject racism, we reject white supremacy, we reject anti-Semitism, we reject the KKK, we reject neo-Nazis, we reject domestic terrorism, and reject hatred.  We will do every single thing in our power to keep hate out of our city."  Compl. ¶ 37.

- "I want to thank all the people that came out there [sic] that message of love, not hate…to fight back on racism, to fight back on anti-Semitism, to fight back on the supremacists that were coming to our city, on the Nazis that were coming to our city."  Compl. ¶ 39.

The first statement was made either the same day or the day after the Charlottesville Rally.  Given this context, it is clear that the "they" Mayor Walsh is referring to—in terms of who is "spewing hate"—are the organizers and participants in the Charlottesville Rally—not Plaintiff.  The second statement, like the first, does not specify anyone by name and simply thanks those who supported a "message of love, not hate" at the Boston Rally and fought back

15

generally against the "supremacists" and "Nazis that were coming to our City." Like the three editors in Loeb, who argued that an inference could be made that the Boston Globe's article that the United Leader was "run by paranoids" was directed at them because they were the ones who decided the content of the paper, Plaintiff argues that, because he was a scheduled speaker at the Boston Rally, an inference can be made that he was part of a "hate" group. The Loeb court rejected this reasoning, noting that no "special application" to a plaintiff can be inferred from general commentary. The instant situation is even more tenuous. It is too speculative to assume that Mayor Walsh was referring to the speakers of the Boston Rally—let alone the Plaintiff, in particular—in these statements. Because these statements were not "of and concerning" the Plaintiff, they cannot be used to support a defamation claim.

        Plaintiff also claims that the following statement was defamatory: "I'm not sure what was said in there [Area 1]. There were a mix of people that went into the free speech area. There was a candidate for senate against Elizabeth Warren." Compl. ¶ 40. To the extent this statement can be construed as referring to the Plaintiff in particular, there is nothing defamatory about it. It is a factually accurate statement—Plaintiff was in Area 1, as he states in his Complaint. Compl. ¶ 30. And the statement does not "hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community," which is a required element of any defamation claim. See Yohe v. Nugent, 321 F.3d 35, 40 (1st Cir. 2003) (citing Massachusetts law). Merely commenting on Plaintiff's presence at the Boston Rally is not defamatory and is not actionable.

### c.     Mayor Walsh Was Not At Fault For Making The Statements.

Even if this Court were to find that Mayor Walsh's statements constituted facts that were "of and concerning" the Plaintiff, Plaintiff still fails to state a defamation claim because Plaintiff is a public figure who cannot prove that Mayor Walsh made the statements with actual malice.

"The level of fault required [for proving a defamation claim] varies between negligence (for statements concerning private persons) and actual malice (for statements concerning public officials and public figures)."  Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003).  If a plaintiff is a public figure, he "must prove, by clear and convincing evidence, that the defendant published the false and defamatory material with 'actual malice.' – that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Murphy v. Boston Herald, Inc., 449 Mass. 42 (2007) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80) (emphasis added).

Plaintiff, as a candidate for United States Senate, was a public figure.  See Pendleton v. City of Haverhill, 156 F.3d 57, 69 (1st Cir. 2011) (discussing defamation standard for political candidates).  As a public figure, Plaintiff must allege that Mayor Walsh acted with "actual malice" in order to state a defamation claim.  He has not done so.  At most, Plaintiff has alleged that Mayor Walsh should have known that Plaintiff was not a member of a hate group because Plaintiff, at some unspecified time, held signs in support of Black Lives Matter and against Monsanto—which, according to Plaintiff, is akin to denying he was a member of hate group. But the fact that Plaintiff held certain signs is not enough to show that Mayor Walsh made his statements knowing them to be false or with reckless disregard for their falsity because "such denials are so commonplace in the world of polemical charge and countercharge that [denials], in themselves, [] hardly alert the conscientious reporter to the likelihood of error." Harte-Hanks

Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 692 (1989) (quoting Edwards v. National Audubon Society, Inc., 556 F.2d 113, 121 (2d Cir. 1977) ("Surely liability under the 'clear and convincing proof' standard of New York Times v. Sullivan cannot be predicated on mere denials, however vehement….")). As a result, Plaintiff's contention that Mayor Walsh and should have known that he was not a member of a hate group because he held up certain signs is not enough to prove "actual malice" and, therefore, Mayor Walsh did not have the requisite level of fault in making the statements to support any defamation claim against them.

## V.     CONCLUSION

WHEREFORE, for the reasons set forth above, Mayor Walsh and Commissioner Evans respectfully request that Plaintiff's Complaint be dismissed in its entirety with prejudice.

Respectfully submitted:

**MARTIN J. WALSH AND WILLIAM EVANS**

By their attorneys:

Eugene L. O'Flaherty
Corporation Counsel


*/s/ Nicole M. O'Connor*
Nicole M. O'Connor (BBO#675535)
Nieve Anjomi (BBO#651212)
Senior Assistants Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4042 (Anjomi)
Nicole.OConnor@boston.gov
Nieve.Anjomi@boston.gov

## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document upon all counsel of record via this court's electronic filing system and upon any non-registered participants via first class mail.

|  |  |
|---|---|
| Dated: November 30, 2020 | */s/ Nicole M. O'Connor*<br>Nicole M. O'Connor |

## 7.1 CERTIFICATION

I, Nicole M. O'Connor, hereby certify that I conferred with Plaintiff via telephone on November 25, 2020, to discuss the issues raised in the above motion. The Parties were unable to narrow the issues.

|  |  |
|---|---|
| Dated: November 30, 2020 | */s/ Nicole M. O'Connor*<br>Nicole M. O'Connor |